ROSARIO ROTINO, PROSECUTOR, v. J. P. SCANLON, INC.,
DEFENDANT.

Submitted May 7, 1940—Decided August 28, 1940.

Before Justices CASE, DONGES and HEHER.

For the prosecutor, *Nathan Baker* and *Edward J. O'Brien.*

For the defendant, *Charles J. Gormley* and *Wall, Haight,
Carey & Hartpence.*

The opinion of the court was delivered by

CASE, J.   We have for review a judgment in the Hudson
County Court of Common Pleas which affirmed the dismissal
by the Workmen's Compensation Bureau of prosecutor's peti-
tion for a larger compensation because of alleged increased
permanent disability.   The question is of fact as to whether
there is an increase in permanent disability chargeable to the
accident upon which the original award was made.   The

bureau decided in the negative; the finding was that any increase that there has been is due to the natural progress of a pre-existing condition and that the workman has been fully compensated for any disability resulting from the accident. So, too, the Pleas on appeal.

We have, *Anderson* v. *Federal Shipbuilding and Dry Dock Co.*, 118 *N. J. L.* 55; *Grotsky* v. *Charles Grotsky, Inc.*, 121 *Id.* 461, examined the testimony. There is proof both ways, but we conclude that it does not weigh down in favor of the prosecutor. Upon a petition to establish and obtain amended allowance for an increase or a decrease in disability the burden is upon him who asserts the change. *Pasquale* v. *Clyde Piece Dye Works*, 120 *Id.* 557. *Cf. Tucker* v. *Frank J. Beltramo, Inc.*, 117 *Id.* 72 (at *p.* 80); *affirmed,* 118 *Id.* 301; also the Supreme Court opinion in *Cirillo* v. *United Engineers and Constructors, Inc.*, 120 *Id.* 225 (reversed on other grounds, 121 *Id.* 511). The testimony of increase or of decrease must be predicated upon the condition and causes determined at the original hearing. *Cirillo* v. *United Engineers and Constructors, Inc.*, 121 *Id.* 511. The rule is particularly pertinent here for the reason that, against petitioner's contention on the original claim, claimant did, prior to the accident, suffer from earlier disease or injury disassociated from the employment, which was chargeable with a percentage of the disability. A judgment under the Workmen's Compensation act is *res adjudicata* of the nature and extent of the disability then existent. *Cirillo* v. *United Engineers and Constructors, Inc., supra.* The deputy commissioner, the same at both hearings, considered that the present increased disability is the result of the pre-existing ailments, without contribution from the incidents of employment. The Court of Common Pleas agreed. Our study of the proofs brings us to the same conclusion.

We discover no error in the form of the determination and judgment in the Common Pleas or in the method by which the judge arrived thereat. The decision plainly shows that the judge studied the transcript of the record and testimony and the arguments of counsel. He briefly comments upon the professional testimony and gives his reaction to those proofs;

and in so doing commits no reversible error. We are satisfied from the record that he gave original study to the case and reached an independent conclusion. He arrived at the same result as did the bureau and incorporated within his determination the award of that tribunal. It was not necessary that he should reach for new words or other phrases with which to express his findings.

The judgment below will be affirmed, with costs.

Mr. Justice Heher dissents and favors a reversal.

HEHER, J. (Dissenting.) Pointing to the concurrence of the Court of Common Pleas in the finding of the Compensation Bureau that the injured employee's "present increased disability is the result of the pre-existing ailments, without contribution from the incidents of employment," my brethren perceive "no error" in the Common Pleas judge's analysis and treatment of the "professional testimony," nor "in the method by which" he reached that result. I dissent from this view.

The judge's formal conclusions reveal that he was guided in his determination by what I consider an erroneous principle. Citing the case of *Cirillo* v. *United Engineers and Constructors, Inc.*, 121 *N. J. L.* 511, he ruled that, to qualify a medical witness on the question of an increase or decrease of incapacity, he "must *know*" the employee's condition at the time of the earlier award, and that, with one exception, the employee's physicians did not meet that test, and the "testimony of the exception does not impress." This plainly means, in my view, that personal knowledge derived from an examination of or attendance upon the employee is an indispensable qualification: and such is not the rule. If it were, it would indeed preclude the eduction of expert medical opinion by a hypothetical question based upon the evidence. That such was the judge's view is conclusively demonstrated by the medical testimony. It is fact that two of the three medical experts called by the employee (Dr. Watman and Dr. Meehan) had examined him prior to the hearing eventuating in the original judgment, while the evidence given by the third (Dr. Keller)

was elicited, without objection, by hypothetical questions based upon the history introduced in evidence.

And the proofs in my opinion afford a rational basis for the conclusion of a substantial increase of disability chargeable to the industrial accident concededly suffered by the employee—one that is within the realm of probability. For fifteen years prior to the mishap, he had continuously performed heavy, laborious work for the defendant employer, and he has since been disabled. He was awarded compensation on the basis of but five per cent. of total incapacity—on the hypothesis, of course, that that was then the full extent of his disability attributable to the industrial accident. The medical witnesses are one on the proposition that there has been a considerable increase of incapacity, but they disagree as to whether it is traceable in any degree to the accident. This disability cannot be reasonably explained as the consequence of disease unassociated with trauma. The inference is irresistible, as I see it, that there has been a material increase of incapacity referable to the mishap in the sense that it rendered active a dormant condition of osteoarthritis. And the physicians are in accord that such condition is progressive.

The testimony of the employer's medical experts was not of a character to countervail the categorical, unequivocal and, to me, convincing opinion evidence given by the employe's physicians. It would seem, as Dr. Keller testified, that the employe's capacity for uninterrupted heavy manual labor prior to the mishap is demonstrative of inactive arthritis, for arthritis is normally "a slow progressive lesion." Dr. Perlberg (called by the employer) testified thus: "*Q.* Would you care to answer as to the effect of trauma on a person who has such a condition (arthritis), trauma to the back, or would you prefer not to answer. *A.* I would not rather answer it." And, conceding that the testimony of the employee disclosed symptoms of traumatic aggravation of a pre-existing arthritis, the doctor implied, although he retreated when pressed for a definite answer, that the employe was a malingerer. Another, Dr. Benjamin, in reply to a question as to "what caused that pain to appear in his lumbar region after the accident and

continue right along up to date, when he didn't have it prior to the accident," testified: "I think this is a common occurrence in a man with a severe arthritic tendency as he has, without any trauma." When it was pointed out that the employee had done laborious work without interruption for years before the accident, apparently suffering no pain, he said: "The history of trauma that I got was not sufficient to account for it on the basis of trauma. Q. You think it is a real coincidence then? A. I think probably the occurrence of this happening while he was stooping to lift something up is, in my opinion, a mere coincidence with the occurrence of his pain. Q. What happens when you bend to lift up a weight? A. A lot of things." And a third, Dr. Ruoff, conceded that the employee was under a disability of from twenty-five to thirty-three and one-third per cent. but he disagreed with certain findings (to be referred to hereafter) made by the staff physicians of Mt. Sinai Hospital at the city of New York, and said he "would have to take with a grain of salt a good part of what he (the employee) complains of as being related to trauma." This was in answer to a question pointing out that the employee had symptoms after the accident which he had not experienced before. Then the witness denied that he had said he "didn't believe the man." The report of the examination of the employee made at the Mt. Sinai Hospital on April 13th, 1938, read into evidence in part, contained this finding: "The exquisite tenderness over the spinous processes of the fourth and fifth lumbar vertebrae, and the X-ray appearance of an old fracture of the spinous process of the fourth lumbar vertebra indicate that the lower back pain is due to a residual lesion resulting from the trauma sustained in October, 1936."

The testimony of the employee's physicians was that his disability, due to trauma, had increased to about one-third of total. Two of the employee's physicians had examined him before the five per cent. award was made, and therefore were in a position to fix the extent of the increased disability from personal observation. None of the employer's physicians testified at the first hearing, although two had then examined the employee.

It is indisputable that there has been an increase of disability since the entry of the basic judgment. To say that no part of such increase is fairly attributable to trauma flowing from the accident is to disregard what I conceive to be facts in proof, *i. e.*, the suddenly occurring incapacity after a severe physical injury, and the marked progressive character of the condition thereafter. Applying to the evidence the established rule that, where the disability is the product of disease aggravated by accidental injury of the statutory class, it is compensable, the employee has, it seems to me, clearly sustained the burden of proving an increase of disability.

Thus it is that, in my view, the judgment should be reversed, and the cause remanded to the Court of Common Pleas for re-examination and appraisement of the evidence and a determination in the light of the correct principle.